**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No._____

---

Larry Tanner,
Individually,

       Plaintiff,

v.

AFL Maintenance Group, Incorporated,

and

Jerry Natividad, individually

       Defendants.

---

**Complaint and Jury Demand**

---

      COMES NOW, Plaintiff, Larry Tanner, and for his complaint against Defendants states as follows:

**Introduction**

      This is an action for unpaid overtime wages brought pursuant to the federal Fair Labor Standards Act, pursuant to 29 U.S.C. § 207, to 42 U.S.C § 1981 and an action under the Colorado Wage Act for unpaid wages.  Section 8-4-109, COLO. REV. STAT.

**Jurisdiction**

1.    Jurisdiction is conferred by 28 U.S.C. §1331 and 28 U.S.C. §1367.

**Venue**

2.    The unlawful employment actions described below were committed in the State

1

of Colorado.  Venue is proper in the United States District Court for the District of

Colorado under 28 U.S.C. § 1391(b).

**Parties**

3.      Larry Tanner is an African-American person.

4.      AFL Maintenance Group, Incorporated is a Colorado corporation.

5.      AFL Maintenance Group, Incorporated is doing business as American Facilities

Maintenance Group.

6.      AFL Maintenance Group, Incorporated is in the business of providing janitorial

services to its customers with its principal place of business at 1075 S. Yukon Street,

Suite 300, Lakewood, Colorado.

7.      Upon Information and belief AFL Maintenance Group, Incorporated had more

than $500,000.00 in gross receipts each year 2015, 2016 and 2017.

8.      At times relevant to the Complaint Jerry Natividad was an owner and manager of

AFL Maintenance Group, Incorporated.

9.      Jerry Natividad is white or Hispanic.

10.     Jerry Natividad made all decisions  or delegated to others the discretionary

authority to do so concerning the demotion of Larry Tanner from a supervisor position,

the replacement of Larry Tanner as a supervisor with a white or Hispanic employee and

the termination of Larry Tanner's employment and replacement of him with a white or

Hispanic employee.

11.     At all times relevant to the Complaint Jerry Natividad acted directly and indirectly

in the interests of the employer in relation to Larry Tanner by setting his rate of pay, the

method of compensation, hourly, and determining not to pay Larry Tanner time and one-half for hours worked over forty.

12.     AFL Maintenance Group, Incorporated was Larry Tanner's employer within the meaning of 29 U.S.C. § 203(d) at all times relevant to the Complaint.

13.     Jerry Natividad was Larry Tanner's employer within the meaning of 29 U.S.C. § 203(d).

14.     AFL Maintenance Group, Incorporated was Larry Tanner's employer within the meaning of Section 8-4-101(6) COLO. REV. STAT.

**General Allegations**

15.     Paragraphs 1 through 14 are incorporated herein by reference.

16.     Larry Tanner worked for AFL Maintenance Group, Incorporated in Colorado Springs beginning in 2015 as a Floor Tech and as a Cleaner.

17.     Larry Tanner was assigned to clean several large buildings including the Colorado Springs Police Operations Center, US Bank building and buildings owned by the Falcon School District, among others.

18.     Throughout Larry Tanner's employment in 2015, while he was employed as a Floor Tech and as a Cleaner, he regularly worked at least forty hours a week Monday through Friday, during regular business hours.

19.     Plaintiff worked additional hours on weekends cleaning buildings and performing other work for employees who were sick or otherwise unavailable to work.

20.      Defendant Jerry Natividad knew that AFL Maintenance Group, Incorporated was required to pay overtime (one and one-half the regular rate) to Mr. Tanner and others

for the weekend hours because he knew of the federal Fair Labor Standards Act's requirement that hours over forty be paid at the overtime premium rate.

21.     Defendant Jerry Natividad knew that AFL Maintenance Group, Incorporated was required to pay overtime (one and one-half the regular rate) to Larry Tanner and others who performed cleaning on weekends because he knew that Larry Tanner and others were regularly working forty hours per week during regular business hours Monday through Friday.

22.     In an effort to hide and cover up the fact that he and AFL Maintenance Group, Incorporated was not paying overtime to employees for weekend hours over forty he implemented a pay system which recorded hours worked over forty as "project work" on employees' pay stubs and failed to record the number of hours worked over forty on the paystub.

23.     In an effort to hide and cover up the fact that he and AFL Maintenance Group, Incorporated were not paying overtime to employees for hours worked over forty he recorded hours worked over forty on employee paystubs as a single quantity e.g. "1" and the total dollars paid at the regular hourly rate as payment of "1" unit or quantity of work.

24.     In the foregoing manner Jerry Natividad avoided recording on the paystub the number of overtime hours worked, which would have alerted anyone looking at the paystub (including the United States Department of Labor) that he and AFL Maintenance Group, Incorporated were not paying an overtime premium for hours worked over forty and were paying overtime hours at the regular hourly rate.

4

25.    Jerry Natividad instructed his staff to pay the overtime hours based on project reports signed by customers rather than have the employee record the weekend overtime hours on his regular timesheet.

26.    In November 2015 Plaintiff's supervisor quit unexpectedly.

27.    Plaintiff was the Lead working directly under his supervisor but was not offered the position of supervisor when his supervisor quit unexpectedly.

28.    Instead of promoting the Plaintiff, Defendant hired a Hispanic woman, who was not familiar with the position to fill the supervisor position.

29.    Within a few days the Hispanic woman quit and Plaintiff was promoted to the position of supervisor.

30.    Plaintiff performed all of his duties as supervisor in a satisfactory manner and was never told that his performance was in any way unsatisfactory.

31.    Plaintiff was not placed on a salary when he was promoted to supervisor and continued to be paid hourly for the hours he worked at his regular rate of pay as shown on his paychecks to be $11.50 per hour.

32.    Plaintiff was paid a $300.00 per pay period bonus for his work as a supervisor.

33.    Plaintiff continued to work weekend hours, covering shifts of other employees, which were above and beyond his regular forty hour work week.

34.    Defendant continued to pay the Plaintiff at his regular hourly rate of pay for the overtime hours worked on weekends.

35.     In the fall of 2016 Defendant brought on a new employee, Jack Smart, who was white or Hispanic to replace the Plaintiff as a supervisor.

36.     Plaintiff was not told why he was being replaced as a supervisor, he was required to train Jack Smart and after Jack Smart was trained Jack Smart was promoted to supervisor and Plaintiff was demoted to Cleaner/Floor Tech and his $300.00 per pay period bonus was taken away from him.

37.     Plaintiff was as qualified or more qualified than Jack Smart for the supervisor position.

38.     Plaintiff noticed that Jack Smart treated African-American employees less favorably than Hispanic and white employees.  For example, he accommodated the schedules of Hispanic and white employees who had second jobs but did not accommodate the schedules of African American employees who had second jobs.  On more than one occasion the Plaintiff noticed that Jack Smart changed the status of African American employees without cause and reduced their hours.

39.     Jack Smart began giving the Plaintiff fewer weekend hours even though Plaintiff complained and asked to be assigned extra hours on the weekends.

40.     After a few months with reduced hours Jack Smart terminated the Plaintiff's employment and replaced him with a white/Hispanic employee.

41.     Plaintiff has suffered damages as the result of Defendants' conduct.

### First Cause of Action
### Against AFL Maintenance Group, Incorporated and Jerry Natividad
### (for violations of the federal Fair Labor Standards Act 29 U.S.C. § 207)

42.     Paragraphs 1 through 41 are incorporated herein by reference.

43.     The Defendants failed to pay Plaintiff for all hours worked in excess of forty in a single work week at one and one-half times his regular hourly rate of pay.

44.     The Defendants' failure to pay Plaintiff one and one-half times his regular rate of pay for all hours worked in excess of forty hours in a single work week was in violation of the federal Fair Labor Standards Act (29 U.S.C. § 207).

45.     The Defendant's violations of the federal Fair Labor Standards Act were willful.

**Second Cause of Action**
**Against AFL Maintenance Group, Incorporated**
**(Colorado Wage Act, Section 8-4-109 COLO. REV. STAT.)**

46.     Paragraphs 1 through 45 are incorporated herein by reference.

47.     Plaintiff's employment was terminated at the volition of Defendant.

48.     At the time Plaintiff's employment was terminated he was not paid for all wages earned.

49.     Plaintiff's unpaid overtime wages were earned, vested and determinable at the time his employment ended.

50.     Plaintiff made a written demand upon Defendant AFL Maintenance Group, Incorporated for payment of wages, specifically unpaid overtime wages and vacation pay, pursuant to Section 8-4-109 COLO. REV. STAT. on or before August 11, 2017.

51.     Defendant tendered unpaid vacation pay to the Plaintiff but paid nothing in response to Plaintiff's demand for overtime wages.

52.     Defendant's failure to pay Plaintiff's earned, vested, and determinable wages violated the Colorado Wage Act, C.R.S. § 8-4-101, *et seq.*

**Third Cause of Action**
**Against Defendant AFL Maintenance Group, Incorporated**
**(For Violations of 42 U.S.C. § 1981)**

53.     Paragraphs 1 through 52 are incorporated herein by reference.

54.     Larry Tanner is an African-American protected from racial discrimination by 42 U.S.C. § 1981.

55.     Larry Tanner received disparate treatment compared to a similarly situated white or Hispanic employee when in 2017 Defendant demoted him from his supervisor position, reduced his pay, reduced the amount of work assigned to him and replaced him as a supervisor with Jack Smart a white or Hispanic employee.

56.     Larry Tanner received disparate treatment compared to a similarly situated white or Hispanic employee when in 2017 Defendant terminated his employment and hired a white or Hispanic employee to replace him.

57.     Defendant's purpose in replacing him with a white or Hispanic employee was to discriminate against him because of his race.

58.     Defendant's purpose in terminating Plaintiff's employment was to discriminate against him because of his race.

59.     The disparate treatment administered to Mr. Tanner during his employment with Defendant was administered by managers or by supervisors authorized to act on behalf of the Defendant in relation to Mr. Tanner's employment.

60.     Upon information the disparate and hostile treatment from managers or a supervisor stemmed from a racial animus.

61.     Defendant's actions and omissions violated Plaintiff's rights secured by 42 U.S.C. § 1981.

**Relief Requested**

Plaintiff requests the following relief:

a.      Payment of unpaid overtime wages for all hours worked over forty in a single work week at one and one-half times Mr. Tanner's regular hourly rate of pay.

b.      Liquidated damages pursuant to 29 U.S.C. § 216 (b),

c.      Back pay,

d.      Compensatory damages for emotional distress,

e.      Attorney's fees and costs,

f.      Penalties pursuant to C.R.S. § 8-4-109 (3),

g.      Pre- and post-judgment interest at the highest rate allowed by law; and

h.      All other legal or equitable relief to which Plaintiff is entitled.

### Jury Demand

**Plaintiff requests this matter be tried by a jury.**

Respectfully submitted this 9th day of January, 2018

CORNISH & DELL'OLIO, P.C.

s/Donna Dell'Olio
Donna Dell'Olio #10887
Cornish & Dell'Olio, P.C.
431 N. Cascade Ave. Suite 1
Colorado Springs, CO 80903
Telephone:  719-475-1204
FAX:  719-475-1264
ddellolio@cornishanddellolio.com
Attorneys for the Plaintiff

Plaintiff's address:
3640 Bridgewood Lane
Colorado Springs, CO 80910